You may proceed. Thank you. May it please the court. Good morning, your honors. Hi, my name is Chagutiek Buonu and I'm appearing on behalf of the plaintiff appellant Brian Ortiz. The matter we have before the court is a simple civil rights violation litigation stemming from Mr. Ortiz's arrest back in 2013 based on a relationship that he had with an adult. The issues before the court are whether Mr. Ortiz officially pled any plausible claims in his pleadings. Additionally, we would like to address whether the defendants, Ms. Tiana Stafford, Phil Grant, Brett Ligon, are entitled to immunity. Even though there was no mention in the lower court's decision on immunity, we feel that we would address that issue here this morning. Essentially, Mr. Ortiz was an individual that in his spare time he moonlighted as a referee through different third party organizations. He would go referee different games, UIL games, different private school games. In doing so, he refereed some games in Conroe ISD. The student in question was 18 years old and he also went to a school in Conroe ISD which was Caney Creek. This relationship between Mr. Ortiz and the student, Mr. Trotter, began in early January 2013. Unbeknownst to Mr. Ortiz, Mr. Trotter was a student at Caney Creek. Mr. Ortiz met this individual on a social media website dating application. That's where their relationship began. As they continued to date, Mr. Ortiz later found out that Mr. Trotter, in fact, was still a student at Caney Creek and also was engaging in different interactions with a police officer that also was employed by Caney Creek. Disturbed by those different revelations, Mr. Ortiz took it upon himself to report this different conduct to law enforcement, including Mr. Trotter's mother, who in fact herself was a police officer. As a result of Mr. Ortiz's continued complaints, Mr. Officer Sutton, which was the individual that was having a relationship with the student, was eventually arrested. Unfortunately, the complaints that Mr. Ortiz raised to law enforcement and to school officials angered individuals that had power in Montgomery County. One of those individuals was the chief of the Conroe ISD Police Department, Chief Harness. As a result of Mr. Ortiz's complaints, Mr. Harness took it upon himself to engage in an investigation with the district attorneys to lodge what we believe has no factual basis, which was a criminal complaint against Mr. Ortiz for an improper relationship between an educator and student. As I said earlier, the chief of the Conroe ISD Police Department, we pled in Mr. Ortiz's original pleadings that this individual, Mr. Chief Harness, the chief of the Conroe ISD Police Department, investigated and worked and conspired with the district attorneys, which are the named defendants in this case. What are the allegations of that? The allegations of... Of the connection between the police department and the prosecutors? The allegations in Mr. Ortiz's original complaint was that Chief Harness worked and investigated Mr. Ortiz and then subsequently a criminal charge morphed and arose from that investigation that included Chief Harness and the district attorneys. Let me take a step back. Do you believe that the... Let's talk about malicious prosecution before First Amendment. Yes. On the malicious prosecution, do you need to allege some motivation of maliciousness? That is like some reason that the charges other than probable cause and a crime being committed? Yes, that is one of the elements that needs to be raised in that prima facie case of malicious prosecution under the Fourth Amendment and that was something that was done. Got it. So then what is the... What would be the malicious motivation of the prosecutors? To appease the chief. This is something that... But isn't the allegation that the chief... The reason the chief is upset is because of the prosecution against Sutton? Well, yeah. That stemmed from Mr. Ortiz's complaint because there's also factual allegations that the chief of the Conroe ISD Police Department was going to do nothing until Mr. Ortiz continuously complained and then put him in a position where they had to do something. But we're just talking about the prosecutors right now because they're the ones that are the defendant on this malicious prosecution claim. Yes. And so I'm trying to understand if the prosecutors prosecute Mr. Sutton, then what is the malicious motivation that they would have to prosecute Mr. Ortiz? Seems like they've got two different people doing the same thing and prosecuting both of them. And again, that's a good point, but we never alleged that the same prosecutors that are named defendants in Mr. Ortiz's claims actually prosecuted the case against Mr. Sutton. Oh, are they different? That's something that we don't know because that... Essentially, we only knew the prosecutors that prosecuted Mr. Ortiz, not Mr. Sutton. It was the same prosecution office, it was the same DA's office, but the individual prosecutors, we don't know the identity of those individual prosecutors. Was Mr. Sutton's done under seal? Like if I looked it up on the Texas court's website, I assume it would be a matter of public record who prosecuted Mr. Sutton. Well, who may have tried the case, but not necessarily who was involved throughout the individual. I don't think that would be a matter of public record, but whoever actually, when the case went to trial, whoever was the prosecuting attorney at that time to get the transcript, that would be a matter of public record. But if they are the same prosecutors, just say it hypothetically, how could we infer a malicious motivation? Usually in these malicious prosecution cases, the argument is, hey, this person did one and here is the prohibited factor that motivated the maliciousness of the prosecution. But assuming the same prosecutor is doing the same thing, it seems hard to infer maliciousness. Well, in this case, it wouldn't necessarily be the same person doing the same thing because there's a clear distinction between Mr. Ortiz and Officer Sutton. Mr. Ortiz was an individual that worked at a bank, whereas Mr. Sutton was an individual that worked at Conroe ISD's police department. So under that particular statute that Mr. Ortiz was prosecuted under, there's a clear distinction based on the face of the reading of the prosecution that that criminal penal statute doesn't apply to Mr. Ortiz as it would apply to Officer Sutton. Was there a case, because I recognize from the court's opinion below that shortly after the Texas Court of Criminal Appeals issued its opinion about the scope of this educator student relationship statute, that the charges against your client were dismissed. Was there some reason that the prosecutors, was there some case out there, some reason that the prosecutors should have known not to charge him as an educator or whatever the statutory text is, employee, I think? To my knowledge, there was not a case. However, the plain reading of the statute and also the case, the appellate criminal case that you're referencing, stated that a plain reading of the statute would show that the legislator issued a broad guidance, or excuse me, an explicit guidance on the broad positions that would qualify as an educator. And those positions that were listed don't even come close to what Ms. Ortiz was. Ms. Ortiz was merely a banker that refereed games. He was never an employee of Caney Creek ISD or high school or Conroe ISD. He was simply an independent contractor at best. So what I understand you're saying is that, obviously, the fact that he wasn't an employee of the, I'm forgetting how it works, he was supposed to be an employee of the high school or employee of the ISD, whichever one was supposed to be covered by the statute, since he wasn't either of those, and he was just working as a referee, that's why he should have been, the charges should have been dismissed against him. Well, that's why the charges should have never been brought, because that statute is not even applicable to Ms. Ortiz. Yeah, and that's the thing I'm curious about. So what would be the standard for, because I couldn't understand why you would argue, well, I should never have been prosecuted, that's why the charges should be dismissed. What would be the best case that we would be able to find for the idea that that also means that it was malicious prosecution to charge me in the first place? Without a motivation, right? Because we've gotten past, we don't really know why they would be motivated to prosecute him other than they think he's violated the statute. Well, the motivation still goes back to, they were, and again, we have to go back to the context of what law enforcement and DAs do. They work together. DAs just don't bring cases upon themselves. Law enforcement brings issues to district attorneys, and then from there they work together to investigate whether or not charges can be brought. And that's what we're alleging was the motivation here, that Chief Harness was upset that Ms. Ortiz was persistent in reporting one of his high-ranking sergeants, and that was the motivation when he teamed up with a district attorney to bring these charges against Ms. Ortiz. And to your point about the test case, I don't think that there's a test case, but I think that even the court, and Winfrey shows that if it's reasonable, if there's a reasonable understanding of what the law is, if that prosecutor acts unreasonably, then that would be considered satisfying that element of malicious prosecution. So after Ms. Ortiz was then prosecuted, there's a huge issue, and we have to look to the actual arrest warrant. The arrest warrant states and misstates that Ms. Ortiz was, in fact, a Canning Creek High School employee. That is a fact that is extremely material, and it's just a reckless disregard for the truth of the statement. Nowhere in our pleadings did we allege that Mr. Ortiz was a Canning Creek High School employee. Also, nowhere in our pleadings did we allege that he was an employee of Conroe ISD. So taking the plaintiff's pleadings as true, we have easily satisfied that particular issue that Ms. Ortiz was not an employee of Canning Creek or Conroe ISD. We then turn to whether or not probable cause was established. Even though the district court really didn't address a lot of different issues, it mentioned probable cause. Probable cause was something that the district court stated was done and found by the magistrate. However, again, we have to look at the original affidavit, which is in the record at 57 through 59, that shows the different misstatements of material fact to gain that probable cause. And again, we state that the misrepresentation of the material fact was, in fact, that Mr. Ortiz was an employee of Canning Creek High School, and additionally, he was an employee of Conroe ISD. If that, taking that as true, if we remove that fact, that material fact, now we must examine, okay, absent that fact, would probable cause have been reached? And it's our position, and the pleadings will show, that removing that particular fact, there is no way that probable cause would have been reached. Because as the reading of the statute shows, the first element in the criminal statute states that this individual has to be either an employee of that particular high school or has to be one of these positions, there's a laundry list of positions, that's going to be in subsection B of the criminal statute, and Mr. Ortiz did not satisfy any of those. Next, the court mentions that the magistrate found probable cause on his own. Again, the reliance on the independent intermediary doctrine, if a magistrate found probable cause for the arrest, that causation chain can remain intact if it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant. Again, we have to go back to say, to look at that particular probable cause affidavit, because we plead, and it's our contention, that that misstatement of material fact, that Mr. Ortiz was in fact an employee of Caney Creek, is the reason why that probable cause was found. So absent that fact, viewing the facts, allegations, and best light of the plaintiff, probable cause would not have been found. Next we look at, even though the district court did not make any mention of immunity, we turn to immunity because that is something that was raised by the opposing party. And again, to the point that the court raised before, the district attorneys. The district attorneys are the defendants in this case. And they're afforded certain types of immunity, absolute immunity being one, qualified immunity being another, and then there's no immunity at all. First we have to look at whether absolute immunity applies in this particular case. And the answer, we believe, is no, because the crux of the case is actually the prejudicial proceedings, which was the arrest and the misrepresentations of fact that were made to the magistrate. So if we look at what the DA was doing in that investigative process, that is not something that was intimately related to judicial proceedings. That is something that would not be considered quasi-judicial proceedings. So we then go and pivot towards, okay, does qualified immunity apply? And as I stated earlier, there is a two-pronged test to see whether we can discharge that So first we must see whether or not we claim that the defendants committed a constitutional violation in the current law, which we clearly did. He was arrested. All individuals have the right to be free of unlawful arrest. Two, we must see whether or not the defendants' actions were objectively unreasonable in the light of the circumstances. As we mentioned earlier, they were. A plain reading of the statute clearly shows that Mr. Ortiz did not fit within the parameters of that penal code. In no way, shape, or form was he an educator. And I'm out of time. Thank you, Counsel. Good morning. Ron Chen on behalf of the appelees in this case, Brett Ligon, Phil Grant, and Tiana Stanford. I'm here with the county attorney, B.D. Griffin, and Amy Dunham from our office as well. I will try to take my friend's arguments in reverse order because I do agree with him that immunity is an important point and I believe that it can actually be the beginning and end of your consideration of this matter. Nowhere in the face of Mr. Ortiz's complaint, either his original complaint or his first amended complaint, does he allege that the defendants, the prosecutors in this case, did anything outside of their regular prosecutorial duties. Well, within their regular prosecutorial duties, they should have read the penal code under which they were seeking to charge somebody. Absolutely. That would be within their duties. Absolutely. And that's correct. And we're talking about 21.12? 21.12, the Texas Penal Code, Your Honor. All right. And it begins with the person needs to be an employee of a public or private primary or secondary school district. And then you go down and it refers to another section where different positions are set out. Right. And so as part of your prosecution, you would have read this statute to look at what you're prosecuting him under. Yes, Judge. So he needs to be an employee. So what facts would give rise or support a conclusion he was a referee? He was a UIL referee at high school football and basketball games. All right. So tell me what would lead you to conclude based on that that he was an employee of the school district or was in one of these positions that's set out in the statute. The first point I would raise is prosecutors are the only people that Mr. Ortiz sued. And they relied properly on an affidavit. In order to issue the arrest warrant for Mr. Ortiz, they relied upon the affidavit of a law enforcement investigator. And in that affidavit that was referenced by my friend, the investigator indicates that he is an employee of Conner Eyes ISD and this Caney Creek High School. So I believe that the case law indicates that a prosecutor performing their normal duties, even if that turns out to be false, it's not a, they do not give up absolute immunity by relying on that testimony of a law enforcement officer. But to answer your question directly, for facts of this case as known by the prosecutors at that time. So the sole basis for the prosecutor's conclusion that he was an employee of the school district was a representation made in an affidavit by an investigator? Is that what you're telling me? No, that was just the first point. The second point I believe would be that there was no precedent. This has never been challenged before in the state of Texas about whether or not someone in either Officer Sutton's position as a Conner Eyes ISD police officer or a UIL referee would be considered an employee of. What does UIL stand for? I believe it stands for University Interscholastic League. So it's the after school activities, including football. I think they also do debate tournaments, stuff like that. So it's. Nothing about that that would lead me to conclude that he was an employee of the school district. The complaint includes the allegation that they actually met at Mr. Trott's high school during the homecoming game. So. Well, the homecoming games aren't restricted to students and employees. I understand. But I believe that prosecutors could have had the well-founded belief that the intent of this statute that criminalizes an improper relationship between an educator and a student was to protect students, which Mr. Trott clearly was at this time. He was still attending Caney Creek High School from adults in positions of authority at the school. And a referee at a high school football game. This was not argued before. So I believe the prosecutors, they went forward. And ultimately, Judge, if the prosecutors got the law wrong, they're still entitled to absolute immunity. The case law is clear on that. They can get the law totally wrong. They can have a mistake. And as long as they are within their duty as an advocate for the state in the judicial process, they have absolute immunity. So I believe that cuts off all of Mr. Ortiz's claims. But to move on, the cases also make clear that to look at absolute immunity, you don't look at the title of the person who's claiming it. You look at the function that is complained about. So all the complaints against these prosecutors are their normal job as a prosecutor. So arresting and charging Mr. Ortiz, that's clearly something that every prosecutor does in every criminal case to start. Detaining Mr. Ortiz and having him be subject to the conditions of bond, that's clearly something that is normal in the criminal process. There's nothing within the four corners of either the original complaint or the First Amendment complaint that leads us to believe that any of these prosecutors stepped outside of their normal job as advocates for the state and did anything that could cause them to lose absolute immunity. But even if you set absolute immunity aside and evaluate plaintiff's claims and the qualified immunity, as the district court indicated, dismissal would still be proper. Because even under a standard of qualified immunity, prosecutors would still, did not violate the rights of Mr. Ortiz. There's probable cause. As my friend talked about, the affidavit, he says that he complained about this affidavit. I must have missed it in this complaint because I've looked at both his original complaint and his First Amendment complaint. There's no mention of the arrest affidavit. So I don't believe any claim was raised from that. But as I had mentioned before, even if there is some flaw with that affidavit, even if the testimony of the law enforcement officer who made that affidavit turns out to be false, that does not remove absolute immunity for the prosecutor who goes forward and presents that affidavit to a magistrate. My friend also talks about Chief Harness, the chief of this Officer Sutton of the Conroe ISD police force and how he somehow involved the prosecutors. There's no allegation of that in either the original complaint or First Amendment complaint. He wasn't brought as a defendant in Ortiz's lawsuits. So if he was integral to this conspiracy that Mr. Ortiz seems to be alleging, he's not here to answer for it. So we can only focus on what is complained about. And the complaints are against these prosecutors. And all those actions are something that every prosecutor would do for every criminal case that comes across their desk. So I believe this case can be decided and ended with absolute immunity. But just to address some of the other issues, I agree with some of the questioning of Judge Odom earlier, of my friend, that on the face of the allegations in the complaints from Mr. Ortiz, he can't make a case for malicious prosecution. There's no discussion of any intent or motive or malice on the part of the prosecutors to bring this prosecution, and that's an element. But I think the bigger element is, again, going back to probable cause. Even if there was a malicious intent, the case law indicates that it's not malicious prosecution if there's probable cause to bring criminal charges. I also further agree that it's a public record about who the prosecutors were for this other case of Officer Sutton. And I believe if you were to look back at the published cases in the state reporters about the prosecution of Officer Sutton, that you will see that those are the same three prosecutors that are sued by Mr. Ortiz here. But again, I think all of this is kind of secondary and tertiary to the bigger question of, do these prosecutors, did they do anything to remove the cloak of immunity? And I say, based upon just the, you know, assuming everything that Mr. Ortiz has pled in his favor, no. They haven't done anything that causes them to lose immunity. The absolute immunity shield doesn't even take into account how egregious the behavior is. So there's case law in this circuit that talks about if a prosecutor, you know, decides to make an offer to dismiss charges against a detainee in a jail after that detainee was injured in a jail fire, clearly a quid pro quo situation, he's still acting as a prosecutor by making that offer. Even though, you know, objectively that might be an abhorrent thing to do, to try to trade dismissal of criminal charges for dismissal of a possible civil suit against the county. This court held was still entitled that prosecutor to absolute immunity. So I would say that nothing that Mr. Ortiz alleges that the prosecutors did in this case rises to the level, and that's not even the standard. We have to look at the functional, the function that he complains about. So typically the only other functions that the case law talks about the prosecutors could be involved in that might remove them from absolute immunity are administrative functions and investigative functions. I don't think any of that applies to anything that Mr. Ortiz claims. Now he does talk about an investigation with Chief Harness. That's the first time I've heard about it. It's not in his complaints. And he had a chance to amend as discussed, and he didn't add that in. The only thing that he added, in my recollection, regarding Chief Harness is a comment that Chief Harness apparently made to other officers, not to these prosecutors. So I don't see any connection. I don't see anything that would indicate that these prosecutors were involved in the investigation. At least nothing that he complains about. Nothing that rises to the level of the cases where this circuit has ruled that prosecutors lose absolute immunity. For example, if a prosecutor, there's a case where the prosecutor was involved in tampering with expert testimony regarding a boot print, and I believe that that was determined to be a police function. So the general rule, as you know, is if a prosecutor does something that would, if a police officer had done it, would only give them qualified immunity, then the prosecutor would have qualified immunity. There's nothing alleged like that in this case by my friend. And again, I would go back to talking about this underlying statute. The prosecutors did not know, at least there was no precedential precedent. The question was asked to my friend whether or not this had been decided before. Looking at the cases and looking at the published cases of Officer Sutton, this was a matter of first impression for Texas courts. So I would argue there was no mistake made by the prosecutors, but as I said, even if there was a mistake of law made in bringing these charges, it does not remove their absolute immunity. I believe that the district court got it right. I believe that they properly dismissed Mr. Ortiz's complaint even after he was allowed to amend. The district court at the pretrial hearing instructed Mr. Ortiz's counsel about what he was looking for and what he saw as the shortcomings of his complaint. And gave him every opportunity to fix it. That didn't happen and that's why we're here and I believe the district court got it right. Thank you. Yes, Your Honor. Your Honor, first I would like to address the point that my friend on the other side made regarding the allegations to whether or not it was pled that Mr. Harness investigated Mr. Ortiz with the district attorneys. I would like to draw the court's attention to page 68 of the record where it states that consequently Chief Harness worked with Phil Grant, Tiana Stafford, and Brett Ligon investigating Mr. Ortiz. That's a clear, excuse me, unambiguous allegation in the complaint stating that Mr. Harness investigated Mr. Ortiz with these individuals. Additionally, like I stated earlier, there was no mention of immunity in the lower court's ruling. However, I would like to address a couple of points that were raised. Before we get to immunity, I want to make sure I understand while we're on page 68 of the record. There's a sentence in the next paragraph, 22. The prosecutors, quote, received evidence stating Mr. Ortiz was classified as an independent contractor. Is this the only place in the complaint where that allegation is made and is there any fact to support it? The allegation that he was an independent contractor and not an employee? Sorry, I understand your argument there. I mean that the prosecutors, quote, received evidence stating that he was an independent contractor. Yeah, that's the only place in the complaint where it states that he received information. So we don't know what the information was, how they received it, when they received it, who gave it to them, what it said? No, but again, like stated earlier, I think it can be reasonably inferred from the facts that being a referee with a third-party organization doesn't rise to the level of being a W-2 employee at Caney Creek High School. Additionally, as the Texas legislator advised in the penal code, neither does being a referee fit within the parameters of those listed school positions that would constitute an educator under this particular penal code. And again, I don't want to get away from that because that is an important point to the probable cause argument. Because without that fact, there's no probable cause. So that misstatement alone, that he was an employee of Caney Creek, essentially makes the probable cause that they rely on. And again, turning to the affidavit, if you look at it, it shows that this particular officer, in conjunction with Ms. Stanford, a DA, made these allegations that Mr. Ortiz was an employee. Did you sue that officer for making a false statement in the affidavit? No, no. So these particular individuals knew that this statement was false. And again, that was what was relied on by the magistrate. So absent that particular fact, probable cause would not have been established in this particular case. So turning back to absolute immunity, a prosecutor who assists, directs, or otherwise participates with the police prior to an indictment, undoubtedly is functioning more in his investigative capacity than his quasi-judicial capacity of deciding which suit to bring and conducting them in court. This court held that in Moreno v. City of Gila, which shows that if a prosecutor engages in an investigative action that is not protected by quasi-immunity, therefore, the prosecutors in this case do not enjoy that absolute immunity. Then we must pivot to whether or not qualified immunity would be applicable. And again, as stated earlier, the plaintiff satisfied that two-pronged test. First, he claimed that there was a clear constitutional violation, which was his arrest and detention, and then that the action by the prosecutor was clearly unreasonable based on a plain reading of the statute.  Again, it was plain on his face, and it was clear. So allowing, and I'm out of time, if I can make this last point. You can conclude. So the statute being plain on his face, allowing these prosecutors to overreach and interpret the statute and make individual citizens as their test case, just because the law is not, in their opinion, well settled, you can't make test cases of individuals to see whether that law can become settled. Because not every individual will have the opportunity to hire counsel to take it to the appellate level to contest the law. Thank you. Thank you, counsel. That concludes our oral arguments for the day. The court will take these matters under advisement, and we are adjourned.